Dorothea YOGGERST,
Plaintiff-Appellant,

v.

Stan STEWART, James McDonough,
Michael Hedges and Ken Kirby,
Defendants-Appellees.

Nos. 79–2356, 79–2359.

United States Court of Appeals,
Seventh Circuit.

Argued April 17, 1980.
Decided June 16, 1980.

Andrew J. Leahy, Springfield, Ill., for plaintiff-appellant.

Karen Konieczny, Chicago, Ill., for defendants-appellees.

Before BAUER and CUDAHY, Circuit Judges, and NOLAND, District Judge.[*]

CUDAHY, Circuit Judge.

This is an appeal in two companion cases brought by an employee of the Illinois Governor's Office of Manpower and Human Development ("GOMAHD") alleging under 42 U.S.C. § 1983 that four other employees of GOMAHD had violated her First Amendment right to free speech and seeking damages for this violation. The four defendants in the two cases consist of plaintiff's supervisor, Michael Hedges; James McDonough, an administrative assistant to the Director of GOMAHD (who supervised personnel activities); Stan Stewart, a technical advisor (legal) to the Director of GOMAHD; and Ken Kirby, Deputy Director of GOMAHD.

* Honorable James E. Noland, District Judge of the Southern District of Indiana, is sitting by designation.

At a time when the news media were announcing the impending termination of the Director of GOMAHD, L. W. Murray, plaintiff Yoggerst made a comment over the telephone to a fellow worker, "Have you heard the good news?" For this she was reprimanded orally and in writing by her supervisor, Hedges, on the advice of McDonough and Stewart; a copy of the written reprimand was placed in her file by McDonough; and her grievance with respect to the reprimand was subsequently denied by Kirby. The district court, with respect to Yoggerst's civil rights complaint against Stewart and McDonough, granted summary judgment for defendants. With respect to Hedges and Kirby, the district court dismissed the complaint for failure to state a claim upon which relief could be granted. We affirm the dismissal of the complaint against Kirby and the grant of summary judgment in favor of Stewart. We reverse the dismissal of the complaint against Hedges and the grant of summary judgment in favor of McDonough.

### Facts

Plaintiff Yoggerst and the four defendants were employees of the State of Illinois serving in GOMAHD, the offices of which were located in Springfield, Illinois. Yoggerst was an administrative assistant, in charge of property control. As indicated, Hedges was Yoggerst's supervisor, McDonough was an administrative assistant to the Director (supervising personnel matters), Stewart was a technical advisor (lawyer), responsible to the Director, and Kirby was Deputy Director of the agency.

On April 26 and 27, 1978, unconfirmed reports were circulating indicating that L. W. Murray had been discharged by the Governor from his position as Director of GOMAHD. On April 27, 1978, the *Chicago Sun Times* featured an article under a headline which read, "Report Thompson Axes Aide." In fact, Murray had not been fired and remained as Director of GOMAHD through

May 1978. Rumors of his departure, however, created an atmosphere of concern and confusion within the agency.

On the morning of April 27, 1978, Yoggerst made a telephone call to a fellow employee, Linda Coker, seeking information about a work-related matter. When Coker picked up the telephone, Yoggerst's first inquiry was, "Did you hear the good news?" The question was obviously directed to the unconfirmed reports of Murray's firing. Coker, responded that things at the office were pretty "hairy" that morning and that Coker didn't know whether the news was good. The conversation then proceeded on to work-related matters.

Coker then telephoned McDonough, who supervised personnel transactions at GOM-AHD. Coker sounded emotionally upset and told McDonough about Yoggerst's question about the "good news." McDonough suggested that Coker report the incident to Hedges, Yoggerst's immediate supervisor. Coker then contacted Hedges and reported the incident. Coker told Hedges that Yoggerst was creating "unnecessary chaos" and asked Hedges to talk to Yoggerst about it.

Hedges then called Stewart, who, as a technical advisor to the Director, was employed to give legal advice on agency matters to any agency official who requested it. Hedges asked Stewart what, if anything, Hedges could do to control an employee who was approaching other employees and asking if they had heard the "good news" that Director Murray had been fired. Stewart proffered his opinion that, if the employee was disrupting office decorum, Hedges could issue a warning to the employee to cease such conduct. Later the same day Hedges, Stewart and McDonough met in Hedges' office. All three concluded that Yoggerst's comment had aggravated the "turmoil" existing in the office and was, therefore, unprofessional. Stewart reiterated his legal opinion that under the circumstances reprimanding Yoggerst would be appropriate. Stewart and McDonough suggested that Hedges verbally reprimand Yoggerst.

Hedges met with Yoggerst on April 27, 1978. At that meeting Hedges told Yoggerst that her conduct was unprofessional and had disrupted the office. Hedges verbally warned plaintiff that her conduct was unprofessional. Hedges subsequently drafted a written memorandum and sent a copy of the memorandum to Stewart and McDonough. McDonough put a copy of the memorandum in Yoggerst's personnel file but did not forward a copy to the Department of Personnel.

The memorandum placed in Yoggerst's personnel file states in pertinent part as follows:

"This type of behavior serves no useful purpose and only creates further chaos and unnecessary confusion. You may be assured that you are not singled out from other employees of this office in this particular matter. Any employee that works for me would receive the same reprimand as you have for this type of conduct. I trust this behavior will not reoccur."

Yoggerst filed a grievance requesting that the memorandum be removed from her personnel file. She pursued her grievance through step 3 of the grievance procedure, where it was denied by defendant Kirby, who was Deputy Director of GOMAHD. Yoggerst did not pursue her grievance through step 4 with the Director of Personnel for final determination.

Yoggerst resigned her position at GOM-AHD, effective June 15, 1978. On May 25, 1978, Yoggerst filed the complaint herein against Hedges and Kirby, alleging that these defendants had violated her First Amendment rights by reprimanding her and denying her grievance. She requested $400,000 damages against Kirby and $600,-000 damages against Hedges. On May 7, 1979, she filed the complaint herein against McDonough and Stewart, alleging violations of her First Amendment rights. She sought $600,000 damages against both Stewart and McDonough.

As indicated, in the case of Stewart and McDonough, a motion for summary judgment was granted by the district court.

The district court found it unnecessary to determine whether Yoggerst's speech was protected by the First Amendment and found merely that the actions of these two defendants had not infringed upon Yoggerst's constitutional rights. With respect to Hedges and Kirby, the district court followed a similar analysis (finding that, without determining whether Yoggerst's speech had been protected, these defendants' actions did not constitute an infringement of Yoggerst's constitutional rights). The district court dismissed the complaint against them for failure to state a claim upon which relief could be granted.

### Stan Stewart

■ Stewart was a technical advisor for GOMAHD. He was employed to give legal counsel to any agency official on any subject matter relating to agency functions. He had no legal authority to discipline Yoggerst. When asked over the telephone by Hedges what, if anything, Hedges could do to control an employee who was approaching other employees and asking if they had heard the "good news" that Director Murray had been fired, Stewart gave his opinion that Hedges could issue a warning if the employee was disrupting office decorum. Subsequently, Stewart attended a meeting at which Hedges and McDonough were also in attendance and reiterated his legal opinion. Sometime later, Stewart learned that Yoggerst had been given an oral warning by Hedges.

Yoggerst's complaint fails to state a claim against Stewart. The complaint is silent with respect to what duties Stewart owed to plaintiff and how those duties were breached. Stewart did not exercise any "line" authority with respect to Yoggerst.[1] His only involvement in the case consisted of the good faith offering of a legal opinion at the request of an official of GOMAHD, his client. Stewart was not the efficient cause of any injury to Yoggerst. An attorney, offering advice in good faith, is not liable for the torts of a client. *See, e. g., Newburger, Loeb & Co., Inc. v. Gross,* 563

F.2d 1057, 1080 (2d Cir. 1977), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978). Therefore, the district court's award of summary judgment in favor of Stewart was correct.

### Ken Kirby

■ Kirby, as Deputy Director of GOMAHD, heard Yoggerst's grievance seeking the removal of the written memorandum of reprimand from her file. Kirby's denial of the grievance took place at step 3 of the grievance procedure. Yoggerst did not pursue step 4 of the grievance procedure, which entitled her to apply to the Director of the Department of Personnel for a review of her grievance. Proceedings before the Department of Personnel at the step 4 stage are conducted by a panel of state employees. The panel members hear both sides of the dispute and make recommendations to the Director of the Department of Personnel. The decision of the Director of the Department of Personnel is final.

The complaint as to Kirby is silent with respect to the duties which he owed to Yoggerst and how those duties might have been breached. Although it may be argued that, had a final decision been entered by the Director of the Department of Personnel, such a decision, under some circumstances, might be the efficient cause of some injury to Yoggerst, no intermediate decision (which was not appealed) can be deemed, under the present circumstances, to be the efficient cause of such an injury. Exhaustion of the grievance procedure is ordinarily a predicate to any claim of injury by a decisionmaker in the process. Therefore, the complaint with respect to Kirby was properly dismissed.

### Michael Hedges and James McDonough

With respect to Michael Hedges and James McDonough (as with respect to the other defendants), the district court found that it was unnecessary to determine whether Yoggerst's speech ("Have you heard the good news?") was protected by

1. Stewart was not in a "chain of command" having direct authority over Yoggerst.

the First Amendment. Judge Ackerman also determined that none of the actions of the defendants, including the verbal reprimand and the written reprimand placed in Yoggerst's personnel file, had infringed upon her constitutional rights guaranteed under the First Amendment. The court found, *inter alia*, that

> If such actions were held to infringe upon plaintiff's constitutional rights, then the State soon will be unable to protect its interest, as an employer, in efficient functioning. Internal operating procedures and daily personnel affairs would become subject to judicial scrutiny. A consequence of such increased judicial involvement would be to render administrators reluctant to carry out even their most routine personnel transactions.

While we do not disagree with the importance of the considerations of policy cited by the district court, we cannot agree with the conclusion that, as a matter of summary judgment or dismissal of the claims, Yoggerst has failed to show enough to establish infringement of her First Amendment rights. There are genuine issues of material fact both as to infringement and as to the protected nature of the speech. Certainly the verbal reprimand followed by the written memorandum placed in her personnel file may have had a chilling effect, which is legally cognizable, upon her exercise of free speech. The purpose of the verbal and written reprimand was to discipline Yoggerst for her behavior and presumably to prevent a recurrence. If the speech was protected, it is difficult for us to see how her right to indulge in it was not (as a matter of summary judgment at least) infringed. The warning by Hedges and McDonough may certainly be construed to convey the message that like comments in the future would put Yoggerst in danger of discharge. We cannot say as a matter of law that such a message would not significantly constrain her speech.

The district court here has found that, if such a verbal and written reprimand can amount to an infringement of Yoggerst's constitutional rights, "then the State soon will be unable to protect its interest, as an employer, in efficient functioning." This analysis seems to us to raise the question whether the speech may not be protected (by reason of the employer's interest in the maintenance of efficient delivery of services) rather than the question whether there has been an *infringement* of constitutional rights. It may be that further proceedings will disclose that the infringement here has been so minimal that any damages are nominal. But this does not lead us to the conclusion that there is no genuine issue of material fact on the question of impairment or infringement.

In *Muller v. Conlisk*, 429 F.2d 901 (7th Cir. 1970), this court addressed a reprimand of a Chicago policeman for speaking disparagingly of the Department's internal investigation division, and we implied that a reprimand is not inconsequential. In *McGill v. Board of Education*, 602 F.2d 774 (7th Cir. 1979), we dealt with a case involving a teacher who was allegedly transferred in retaliation for her exercise of First Amendment rights. There we announced that: "The test [of unconstitutional retaliation] is whether the adverse action taken by the defendants is likely to chill the exercise of constitutionally protected speech. * * * This chilling effect can be accomplished through an unwanted transfer as well as through outright discharge." 602 F.2d at 780. Certainly, if a transfer can have a chilling effect, the effect of a reprimand is even clearer. Transfer does not necessarily threaten discharge; reprimand presumably does.

Having determined that the oral and written reprimand does not, as a matter of law, fall short of constitutional significance, we address the question whether the speech in which Yoggerst engaged is protected under the First Amendment. The district court, although it discussed this issue, declined to decide it.

The leading case in this area, *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), prescribes a balancing test in attempting to determine whether in a given instance a public em-

ployee's speech is protected under the First Amendment. Thus the Supreme Court said at 391 U.S. 568, 88 S.Ct. 1734:

> The problem in any case is to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.

A number of considerations are mentioned by the Court in its *Pickering* analysis. Thus, there is the question whether the statements at issue were directed toward any person with whom the plaintiff would be in normal contact in the course of his day's work, whether there is a problem of maintaining either discipline by immediate superiors or harmony among co-workers and whether the employment relationship is one as to which personal loyalty and confidence are necessary to its proper functioning. The Court in *Pickering* also considered whether the publication of a letter damaged the professional reputations of certain public officials or would foment controversy and conflict among those officials, whether the speech involved a matter of legitimate public concern upon which debate was vital to informed decisionmaking and whether the plaintiff should be regarded as speaking simply as a member of the general public.

The Supreme Court has also determined that the protection of the First Amendment is not limited solely to "public" speech. In *Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979), which involved "private" conversations between a teacher and her principal, the Supreme Court said:

> We are unable to agree that private expression of one's views is beyond constitutional protection * * *
>
> This Court's decisions in *Pickering, Perry,*[2] and *Mt. Healthy*[3] do not support the conclusion that a public employee forfeits his protection against governmental abridgment of freedom of speech if he

decides to express his views privately rather than publicly. 439 U.S. 413–14, 99 S.Ct. 695–696. (footnotes added)

■ In the instant case, Yoggerst made a casual comment in a telephone conversation with a fellow worker, Coker, which was apparently derogatory to the Director of her agency. Yoggerst's comment did not necessarily involve a matter where "free and open debate is vital to informed decision-making by the electorate." *Pickering v. Board of Education, supra,* at 391 U.S. 571–72, 88 S.Ct. 1736. But her casual comment did involve a matter of some public importance and concern (as evidenced by continuing media speculation concerning the Director's tenure), and, we believe, First Amendment protection should be available absent countervailing negative impacts on the employment relationship. Unless an impairment of efficiency, discipline, harmony, loyalty or some other like value can be demonstrated, the American tradition of making passing allusion to the vicissitudes of the boss is not necessarily subject to sanction.

With respect to any alleged adverse impact on efficiency, discipline, harmony or like value arising from the employment relationship, Yoggerst's conduct was hardly the equivalent of shouting "Fire!" in a crowded theatre. *See Schenck v. United States,* 249 U.S. 47, 52, 39 S.Ct. 247, 249, 63 L.Ed. 470 (1919). We think Yoggerst's casual comment under the circumstances to have been so routine and prosaic that the harmony and discipline of the office would not ordinarily or foreseeably have been adversely affected. Coker must have been extraordinarily sensitive to have become so upset as to bring her "problem" to the attention of McDonough and Hedges. Had Yoggerst persevered with criticism of the head of her agency in such a way as might have been reasonably calculated to create disharmony or to have impaired discipline, we would have a different case. But here

---

2. *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

3. *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

there was a mere passing reference—probably duplicated innumerable times elsewhere under similar circumstances—seemingly devoid of any incendiary, or even mildly irritating, quality. We may assume that some government workers approve of their boss and some do not, but a merely casual indication of mild disapproval in a private conversation does not rise to the level of threat to the departmental order or harmony. Here the apparent overreaction of Coker, evoking the consequent apparent overreaction of McDonough and Hedges seems ludicrous.

Hedges orally reprimanded Yoggerst for her comment and followed up this conversation with a written memorandum. McDonough, who supervised the processing of personnel transactions for the Director of GOMAHD, received a copy of the written memorandum of reprimand and placed it in Yoggerst's personnel file. It cannot be said that there is no genuine issue of material fact as to the actions of either of these two defendants so as to entitle them to summary judgment or dismissal at this juncture.

We regret that this trivial episode, arising from the daily grist of personnel management matters at a State agency, has been elevated to the status of a "federal case". But it seems to us that the management of GOMAHD, in taking seriously the complaints of Coker, is most at fault in what appears to be a ponderously inappropriate reaction to a casual and innocuous comment about the events of the day.

It is possible that further evidence may demonstrate either (1) that no constitutional right has been infringed, or (2) that the speech at issue here was not protected by the First Amendment and, possibly, (3) that no damage was done. But certainly we cannot say that any of these propositions is determinable at this time as a matter of summary judgment.[4]

We therefore affirm with respect to defendants Stewart and Kirby, and reverse and remand for proceedings not inconsistent with this opinion with respect to defendants Hedges and McDonough.

---

4. At the least, plaintiff's case is sufficient to withstand a motion for summary judgment. On the limited facts before us at this juncture, as our opinion indicates, it appears that plaintiff's speech was protected and that her First Amendment rights were infringed, although the damage, if any, may have been nominal. Certainly these issues remain open for further resolution.