**Dorothea YOGGERST, Plaintiff,**

v.

**Stan STEWART, et al., Defendants.**

**No. 79–3098.**

United States District Court,
C.D. Illinois,
Springfield Division.

June 22, 1983.

Andrew J. Leahy, Leahy & Leahy, Springfield, Ill., for plaintiff.

Neil Hartigan, Atty. Gen., State of Ill., Kenneth G. Anspach, Asst. Atty. Gen., Springfield, Ill., Gerri Papushkewych, Wolfson & Papushkewych, Springfield, Ill., for defendants.

## ORDER

J. WALDO ACKERMAN, Chief Judge.

The facts in this case are not in dispute. Plaintiff was an employee of the Governor's

Office of Manpower and Human Development (GOMAHD) as were the defendants. Defendant McDonough was an administrative assistant to the Director of GOMAHD, responsible for personnel matters. Defendant Stewart was employed as a Technical Advisor, responsible directly to the Director.

On April 26 and 27, 1978, unconfirmed reports were circulating about the impending termination of the Director of GOMAHD, L.W. Murray. As the United States Court of Appeals for the Seventh Circuit noted in its opinion reversing, in part, this Court's original disposition of this case, rumors of the Director's departure created an atmosphere of concern and confusion in the agency. *Yoggerst v. Stewart,* 623 F.2d 35, 37 (7th Cir.1980). That day, the plaintiff called another employee, Lynda Coker, regarding a work-related matter. She asked this employee whether she had heard the "good news," referring to the Director's termination. Defendant McDonough received a complaint from Coker regarding plaintiff's statement and referred Coker to plaintiff's supervisor, Michael Hedges. Coker told Hedges that Yoggerst was creating "unnecessary chaos" and asked Hedges to speak with Yoggerst about it. Hedges contacted Stewart, a lawyer, requesting advice concerning discipline of the plaintiff. Stewart advised Hedges that if Yoggerst was disrupting office decorum, Hedges could warn her to cease such conduct. Hedges orally warned plaintiff that her conduct was unprofessional. He later followed up this reprimand with a written memorandum and sent a copy to defendants Stewart and McDonough. McDonough put a copy in plaintiff's office personnel file but did not forward a copy to the Department of Personnel. The memorandum stated in part:

> This type of behavior serves no useful purpose and only creates further chaos and unnecessary confusion. You may be assured that you are not singled out from other employees of this office in this particular matter. Any employee that works for me would receive the same reprimand as you have for this type of conduct. I trust this behavior will not reoccur.

Plaintiff filed a grievance requesting that the memorandum be removed from her file. Her grievance was denied. Plaintiff then filed suit under 42 U.S.C. § 1983, alleging that defendants' acts violated her First Amendment right to free speech. She claimed $600,000 damages against Hedges and McDonough, and $400,000 against Stewart and Deputy Director Kirby, who denied her grievance at step 3 shortly after these events. Yoggerst resigned her position at GOMAHD, effective June 15, 1978.

On October 11, 1979, this Court granted summary judgment to defendants Stewart and McDonough and dismissed the complaint as to Hedges and Kirby, having assumed plaintiff's speech to be constitutionally protected for purposes of that opinion, but determining that defendants' actions did not amount to impermissible infringement. The United States Court of Appeals for the Seventh Circuit affirmed this Court's judgments as to Stewart and Kirby, but reversed as to Hedges and McDonough. *Yoggerst v. Stewart,* 623 F.2d 35 (7th Cir. 1980).

The Court of Appeals remanded the case for consideration, *inter alia,* of the question of whether plaintiff's speech was constitutionally protected. After careful consideration of the opinion of the Court of Appeals and the recent United States Supreme Court opinion in *Connick v. Myers,* —— U.S. ——, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), dismissal for the reasons which follow appears to be the appropriate disposition of this case.

Upon remand, the parties continued to pursue the case. On May 1, 1982, defendants offered to settle the case for a sum total of $3,000. Plaintiff's counsel alleges that the settlement offer made clear that $3,000 was to be a total settlement of all claims against defendants, including plaintiff's attorney's fees. Although $3,000 was acceptable to plaintiff, she did not want to waive her right to request an award of fees. Accordingly, that settlement offer was rejected. Plaintiff now seeks to have this

Court enforce the $3,000 settlement offer but award fees, also. Plaintiff contends that conditioning a settlement on the refusal to pay attorney's fees in litigation brought pursuant to 42 U.S.C. § 1983 violates 42 U.S.C. § 1988 and also constitutes unethical conduct on the part of defense counsel. Although this is an important and interesting issue, which has been well-analyzed by both parties, this matter need not be decided for the reasons which follow.

Initially, this Court emphasizes that there is no dispute over what occurred on or about April 27, 1978. The facts, reiterated above, are set forth in a light most favorable to plaintiff. As the United States Supreme Court noted in *Connick v. Myers*, —— U.S. ——, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), the inquiry into the protected status of speech is one of law, not fact. *Id.* at —— n. 7, 103 S.Ct. at 1690 n. 7.

The Supreme Court has considered the issue of whether certain kinds of speech of public employees are protected by the First Amendment. In *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), a teacher was dismissed for writing a letter to a newspaper criticizing the School Board's allocation of funds. The Court found the plaintiff's speech to be protected, employing a balancing test.

> The problem in any case is to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.

*Id.* at 568, 88 S.Ct. at 1734. Factors which the Court considered in reaching its conclusion that Pickering's speech was protected were: (1) the statements were not directed towards any person with whom plaintiff normally would be in contact in the course of his daily work; (2) there was no question of maintaining discipline by immediate supervisors or harmony among coworkers; and, (3) personal loyalty and confidence were not essential to the proper functioning of the plaintiff's employment relationships with the Board, and to a lesser extent, with

the Superintendent. The Court also considered whether the plaintiff's speech damaged the professional reputation of the Board and Superintendent, whether it would foment conflict and controversy among coworkers (among others), whether it concerned a matter of legitimate public concern on which debate was vital to informed decision-making by the electorate and whether plaintiff's employment was only tangentially involved in the subject matter of the communication, *i.e.,* whether or not plaintiff spoke as a member of the general public. *Id.* at 569–574, 88 S.Ct. at 1735–1737.

In *Givhan v. Western Line Consolidated School Dist.,* 439 U.S. 410, 414 n. 3, 99 S.Ct. 693, 696 n. 3, 58 L.Ed.2d 619 (1979), the Supreme Court noted that the *Pickering* decision was influenced by the fact that the teacher's public statements had not adversely affected his working relationship with the objects of his criticism. Thus, not all speech is constitutionally protected. *See also Cooper v. Johnson,* 590 F.2d 559, 561 (4th Cir.1979); *Kannisto v. City and County of San Francisco,* 541 F.2d 841 (9th Cir. 1976), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1552, 51 L.Ed.2d 775 (1977). Speech which disrupts the working environment could tip the *Pickering* balance in favor of the State's interest as an employer in maintaining efficient delivery of public service.

Recently, in *Connick v. Myers,* —— U.S. ——, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), the United States Supreme Court addressed once again the problem of arriving "at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* at ——, 103 S.Ct. at 1685, *quoting Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734.

In *Connick,* plaintiff was an assistant district attorney who had been competently performing her responsibilities. After being notified that she was to be transferred to a different section of criminal court, plaintiff conveyed to her supervisors her

opposition to the proposed transfer. Despite her objections, plaintiff was notified that she would be transferred.

Plaintiff prepared a questionnaire to obtain her colleagues' views concerning office transfer policy, office morale, the need for a grievance committee, the level of confidence in supervisors, and whether employees felt pressured to work in political campaigns. She distributed this survey to fifteen assistant district attorneys. Her supervisor terminated her employment that same day because of her refusal to accept the transfer and because he considered her distribution of the questionnaire to be an act of insubordination. Plaintiff brought suit pursuant to 42 U.S.C. § 1983, contending that her employment had been terminated because she had exercised her constitutionally-protected right of free speech. Both the district court and the United States Court of Appeals for the Fifth Circuit held that plaintiff's termination was constitutionally infirm. The United States Supreme Court reversed.

The Court stated that language employed in *Pickering* and its progeny "reflects both the historical evolvement of the rights of public employees and the common sense realization that government offices could not function if every employment decision became a constitutional matter." *Id.* —— U.S. at ——, 103 S.Ct. at 1688. The Court, after reviewing the public employment-freedom of expression cases, recognized that when an employee's speech does not relate to any matter of political, social or other concern to the community, government officials should enjoy wide latitude in personnel matters, without intrusive oversight by the judiciary in the name of the First Amendment. *Id.* at ——, 103 S.Ct. at 1690. It held that

> [w]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision

taken by a public agency allegedly in reaction to the employee's behavior.

*Id.*

In order to determine whether an employee's speech addresses matters of public concern, the Court must examine the content, form and context of the statement. *Id.* In doing this, the United States Supreme Court found that the questions relating to office morale, discipline, and confidence in various supervisors were not matters of public import, but merely expressed one employee's personal dissatisfaction with her work environment. The Court further stated:

> To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark—and certainly every criticism directed at a public official—would plant the seed of a constitutional case. While as a matter of good judgment, public officials should be receptive to constructive criticism offered by their employees, the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs.

*Id.* Moreover, an employer need not wait for the environment to become disruptive or for working relationships to be destroyed before taking action. *Id.* at ——, 103 S.Ct. at 1691.

■ Plaintiff Yoggerst's remarks to a co-worker, which conveyed her pleasure at the Director's impending demise, were not matters of public import but merely an expression of her personal dissatisfaction with the Director. Because office routine was somewhat upset due to the rampant rumors, Yoggerst's supervisors sought to return the office to normal functioning by stemming the tide of rumors. They began by reprimanding the plaintiff. To hold that a supervisor cannot reprimand an employee for making a derisive comment about the boss just because the boss and the employee happen to be employees of the state, amounts to "a grant of immunity for employee grievances not afforded by the First Amendment to those who do not work for

the state." *Connick*, —— U.S. at ——, 103 S.Ct. at 1690. Such a result is not required when ensuring that citizens are not deprived of fundamental rights merely because they work for the government. *Id.*

 Additionally, it would appear that the defendants are entitled to a good faith immunity defense. Under *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the subjective prong of the immunity test has been eliminated. Thus, a court will not consider whether a government official acted with malicious intention. In determining whether an official is entitled to a grant of immunity the court must decide whether his conduct, at the time it was undertaken, violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 102 S.Ct. at 2737. As Judge Cudahy recognized in his recent concurrence in *Egger v. Phillips,* 710 F.2d 292 at 323 (1983), it was not until July, 1979, that the Seventh Circuit specifically held that a job transfer, in contrast to a discharge, could be the subject of a first amendment challenge. In the present case, we have a reprimand by a supervisor—not a transfer and not a discharge. Moreover, if a federal district judge would determine on the facts of this case that no constitutional violation had occurred, it seems eminently reasonable that a lay person could not have violated a clearly established statutory or constitutional right of which a reasonable person would have known. Accordingly, in the alternative, I find that defendants are entitled to a grant of immunity for their conduct in this case.

Consequently, because plaintiff's speech did not involve matters of public concern, this federal court is not the appropriate forum in which to review the wisdom of the decision to reprimand plaintiff. In addition, defendants are entitled to assert a good faith immunity defense in these circumstances. Accordingly, this case is hereby dismissed.