⊙ **Dorothea E. YOGGERST, Plaintiff-Appellant,**

v.

**Michael HEDGES and James McDonough, Defendants-Appellees.**

No. 83–2419.

United States Court of Appeals, Seventh Circuit.

Argued April 4, 1984.

Decided July 23, 1984.

Andrew J. Leahy, Leahy & Leahy, Springfield, Ill., for plaintiff-appellant.

Susan Weidel, Chicago, Ill., for defendants-appellees.

Before PELL and ESCHBACH, Circuit Judges, and JAMESON, Senior District Judge.*

ESCHBACH, Circuit Judge.

This is the second time this case has been before us and we are again confronted with the issue whether the plaintiff, Dorothea Yoggerst, received a reprimand from her public employer in violation of the First Amendment. The district court dismissed Yoggerst's complaint on remand from our first decision, and we affirm.

## I.

A complete recitation of the facts can be found in our first decision. *See Yoggerst v. Stewart,* 623 F.2d 35 (7th Cir.1980) (*Yoggerst I*). We provide only a brief summary of the relevant facts here.

Dorothea Yoggerst was an employee of the Illinois Governor's Office of Manpower and Human Development ("GOMAHD"). The present defendants were Yoggerst's supervisor, Michael Hedges, and GOM-AHD's supervisor of personnel activities, James McDonough.

On April 26 and 27, 1978, unconfirmed reports circulated that the Director of GOMAHD, L.W. Murray, had been discharged by Governor Thompson. An article to this effect appeared on April 27 in the morning edition of the Chicago Sun-Times. On the morning of April 27, Yoggerst made a telephone call to a fellow employee, Linda Coker, seeking information about a work-related matter. The first thing Yoggerst said to Coker, however, was "Did you hear the good news?" This question obviously referred to the reports of Murray's termination. As a result of this remark, Yoggerst received an oral reprimand from Hedges, telling her that her behavior was unprofessional and had disrupted the office. Subsequently, a written memorandum of the oral reprimand was placed in Yoggerst's personnel file by McDonough, though no copy of the memorandum was sent to the Department of Personnel (where presumably Yoggerst's permanent personnel file was maintained). Yoggerst resigned from GOMAHD effective June 15, 1978, citing the infringement of her First Amendment rights as her reason for leaving.

Yoggerst filed § 1983 actions against four employees of GOMAHD. The district court granted summary judgment in favor of two defendants and dismissed the complaint against the other two defendants. On appeal, we affirmed the district court's judgment with respect to two of these defendants. *See Yoggerst I, supra.* We reversed the district court's judgment, however, with respect to Hedges and McDonough and remanded the case for further proceedings. Specifically, we stated:

It is possible that further evidence may demonstrate either (1) that no constitutional right has been infringed, or (2) that the speech at issue here was not protected by the First Amendment and,

* The Honorable William J. Jameson, Senior District Judge for the District of Montana, sitting by designation.

possibly, (3) that no damage was done. But certainly we cannot say that any of these propositions is determinable at this time as a matter of summary judgment. *Yoggerst I*, 623 F.2d at 41 (footnote omitted).

Following our remand, the Supreme Court decided *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). In light of that intervening decision, the district court *sua sponte* dismissed the complaint as to Hedges and McDonough, holding that the speech did not address a matter of public concern and was, therefore, without the protection of the First Amendment. The district court further concluded that, even assuming First Amendment coverage, the defendants had qualified immunity from civil damage suits under *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Because we agree with the district court's principal holding, we do not reach the immunity issue.

## II.

■ Public employees do not abandon their First Amendment rights when they enter the workplace. On the other hand, public employers do not lose their ability to control behavior and speech in the workplace merely because they are governmental bodies subject to the restraints of the First Amendment. In *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), the Supreme Court held that a balance must be struck between the two positions. *See also Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 414, 99 S.Ct. 693, 696, 58 L.Ed.2d 619 (1979); *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 284, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1977); *Altman v. Hurst*, 734 F.2d 1240, 1244 (7th Cir.1984) (*per curiam*); *McBee v. Jim Hogg County*, 730 F.2d 1009, 1013 (5th Cir.1984).

The Supreme Court most recently addressed the First Amendment rights of public employees in *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Previously, the issue presented to the Court had been the proper balance between the employee and employer's interests; *Connick* presented for the first time the issue whether specific speech—there, a questionnaire circulated among office workers—addressed a public concern. The Court described a two-step process for determining whether a public employer had violated a public employee's right to free speech. The first step in the process requires a determination, as a matter of law, whether the speech in question addressed a matter of public concern. *Id.* 103 S.Ct. at 1689, 1690. *See also Clark v. Holmes*, 474 F.2d 928 (7th Cir.1972), *cert. denied*, 411 U.S. 972, 93 S.Ct. 2148, 36 L.Ed.2d 695 (1973). The Court held that this determination rests on an examination of the content, form, and context of the speech. *Connick v. Myers*, 103 S.Ct. at 1690. If the speech fails this test, then the plaintiff has no right to a federal judicial forum. This is not to say that the speech is totally unprotected, state law may provide some protection. *See id.* Only after a court determines that the speech addressed a matter of public concern does it reach the second step: application of the *Pickering* balancing test between the speech and the government's interest in efficient operations. *Id.* at 1691–92.

■ The district court held on remand that the speech involved here failed to clear the first hurdle: it did not address a matter of public concern. We agree.

### A.

Before we analyze the district court's holding, we must address briefly the effect of our *Yoggerst I* decision. There, we held that the *Pickering* balancing test applied, and, in discussing the application of that test, we noted:

[Yoggerst's] casual comment did involve a matter of some public concern (as evidenced by continuing media speculation concerning the Director's tenure), and, we believe, First Amendment protection

should be available absent countervailing negative impacts on the employment relationship.

*Yoggerst I,* 623 F.2d at 40. This statement would appear to preclude consideration by the district court of the first step of the *Connick* procedure on remand. However, we concluded that Yoggerst's statement involved a matter of public concern without the benefit of the Supreme Court's test in *Connick* for determining this issue. Indeed, our conclusion that more evidence might show that the speech was unprotected by the First Amendment, *see id.* at 41, suggests that we believed the question to be one of fact, whereas the Supreme Court noted in *Connick* that it is one of law. *Connick v. Myers,* 103 S.Ct. at 1690 n. 7. We must review the case now, as the district court did, in light of *Connick.*

### B.

While *Connick* mandates that we examine the content, form, and context of speech to determine whether, as a matter of law, it can be characterized as speech on a matter of public concern, we believe that the content factor is most important in making this determination. *Cf. Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 415 n. 4, 99 S.Ct. 693, 696 n. 4, 58 L.Ed.2d 619 (1979) (with public speech, must assess impact of content on employee's performance under *Pickering*).

Yoggerst stated, "Did you hear the good news?" The operative word in this statement is "good." The obvious import of Yoggerst's speech was that she disliked the Director and she would be pleased to see him leave GOMAHD. In fact, Yoggerst testified at a deposition that this was her attitude toward the Director. Whether the Director was qualified for his office would be a matter of public interest and concern. Yoggerst made no suggestion in her statement, however, that Murray was an ineffective administrator, that he failed to discharge his duties, or that he had committed some wrongdoing or a breach of the public trust; publication of the remark would provide no basis for determining his qualifications for continuing in public office. *Cf.*

*Connick v. Myers,* 103 S.Ct. at 1690; *Pickering v. Board of Education,* 391 U.S. at 571–72, 88 S.Ct. at 1736–37; *Yoggerst I,* 623 F.2d at 40. Rather, Yoggerst's remark reflected her personal feelings toward the Director in the context of the employer-employee relationship. We assume that many public employees—like employees in the private sector—would prefer to have another superior. It is also not unreasonable to assume that public employees will occasionally express their feelings toward a superior. The First Amendment, though, does not make every expression of a public employee's dissatisfaction with a superior a "federal case." *See Connick v. Myers,* 103 S.Ct. at 1690, 1691. It is clear from the content of Yoggerst's statement that she was speaking in her role as an employee about her personal feelings and not in her role as a citizen on a matter of public concern. *Altman v. Hurst,* at 1244.

The context in which Yoggerst spoke does not alter our conclusion as to the proper characterization of her remark. It is clear that the rumors that Murray would be fired—a matter of obvious public interest and concern—were the impetus for Yoggerst's remarks to Coker. It does not follow, however, that Yoggerst's statement can be characterized as speech on a matter of public concern just because such a concern provided the impetus for speaking. For instance, a comment on the morning following a presidential news conference that the President has no gray hair may have been spurred by the news conference, but it is not speech on a matter of public concern. Moreover, if Yoggerst had told Coker three days before the rumors began that she did not get along well with the Director, the message would certainly not involve a matter of public interest. The content of Yoggerst's speech was clearly about her relationship with the Director, a matter of no public concern; the fact that she spoke at a time when the Director's continued tenure in office was a matter of public interest does not alter this characterization.

We must concur, therefore, with the district court that the complaint should have been dismissed.

### III.

For the reasons expressed above, the judgment of the district court is affirmed.