848 F.2d 748
 47 Ed. Law Rep. 88
 David HESSE, Plaintiff-Appellee,
v.
BOARD OF EDUCATION OF TOWNSHIP HIGH SCHOOL DISTRICT NO. 211,
COOK COUNTY, ILLINOIS, Robert Creek, Anna Countryman, Anne
Koller, Joseph Marchiori, James Rogers, Robert Seger,
Richard C. Kolze and Jack Gaza, Defendants-Appellants.
 No. 87-1522.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 25, 1987.
Decided June 10, 1988.
Rehearing and Rehearing En Banc Denied Sept. 9, 1988.
 
 John H. Hager, Hager & Collins, Chicago, Ill., for defendants-appellants.
 Marilyn F. Longwell, Kerr & Longwell, Chicago, Ill., for plaintiff-appellee.
 Before FLAUM and MANION, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 ESCHBACH, Senior Circuit Judge.
 
 
 1
 David Hesse, plaintiff-appellee, prevailed in a jury trial on his claim filed under 42 U.S.C. Sec. 1983 for alleged abridgments of his rights under the First and Fourteenth Amendments to the United States Constitution. The defendants in this action are the Board of Education of Township High School in Cook County, Illinois, the seven individual members of the Board, the superintendent of the Township High School District and the principal of Schaumburg High School. The plaintiff asserted jurisdiction in the district court on the basis of 28 U.S.C. Secs. 1331 and 1343. We have jurisdiction to review the final judgment under 28 U.S.C. Sec. 1291. Hesse sought both damages and equitable relief, alleging that the defendants took adverse retaliatory job action against him as a result of the exercise of his right to freedom of expression.
 
 
 2
 The appellants challenge the verdict on several grounds. They claim that: 1) the plaintiff's statements did not involve matters of public concern because of their personal content; 2) that even if the plaintiff's statements did involve a matter of public concern, the defendants' interest in maintaining discipline, harmony and efficiency in the public education system outweighed the plaintiff's interest as a citizen in making such statements; 3) that the instructions to the jury were in error; 4) that the job action taken would have occurred irrespective of the plaintiff's expressions; 5) that certain expert testimony should not have been admitted; and 6) that the verdict was excessive in amount. Initially, we dismissed the first appeal of this case because judgment on the jury verdict for damages had left unresolved the plaintiff's claim for equitable relief, but the district court subsequently entered equitable relief for the plaintiff. We will reverse the judgment of the district court and remand with instructions to enter judgment for all the defendants[1] and against the plaintiff.
 
 
 3
 * Hesse has taught at schools in the defendants' school district since 1972, and is a tenured teacher. He teaches classes in both art and photography. Between 1972 and 1985, Hesse taught at Schaumburg High School. During the 1985-86 school year, Hesse served as a traveling teacher between Hoffman Estates High School and Palatine High School. This transfer to a traveling teacher status for one year underlies the plaintiff's contentions that the defendants took adverse job action against him to retaliate for his expressions on matters of public concern and interest. In addition to this transfer, the plaintiff alleges that the defendants harassed him by requiring him to submit his daily lesson plans to them, forcing him to undergo more classroom evaluations than other teachers, and manipulating his 1984-85 teaching schedule to make it less desirable to him. However, the plaintiff does not complain that any of the job action taken resulted in a diminution of his salary.
 
 
 4
 As far back as 1978, Hesse's teaching evaluations contained criticisms of his performance. They contained criticisms of his grading policies, of the lack of motivation of his students, of his inability to maintain student discipline and similar matters. For instance, we note from the record that an evaluation dated December 8, 1978 indicated that 93% of the plaintiff's students in Photography I received D's and F's that term. Numerous other evaluations contained negative ratings based on inadequacies in the plaintiff's performance. Not all of Hesse's evaluations were negative, however. Good and even excellent performance ratings were interspersed throughout the evaluations. Nevertheless, the record is clear that the negative evaluations created within Hesse a deep sense of personal animosity toward his superiors, a bitterness evidenced by his personal attacks against these various school officials in the many memoranda that he wrote to them. These memoranda were often sarcastic, unprofessional and insulting in nature. While some of them did criticize school rules or policies, most of the criticisms were not voiced out of a concern for the public. Instead, they merely defended the plaintiff's personal teaching methods.
 
 
 5
 The plaintiff's personnel record with the school district is replete with evidence of Hesse's personal animosity toward the school officials, and its ultimate disruption to the school environment. Aside from his many rancorous memoranda reacting to his poor evaluations, Hesse's personnel record details several unprofessional displays of hostility. As an example, in one month the plaintiff referred an unprecedented 42 students to the administration for disciplinary action. In another incident, Hesse threw a temper tantrum in class before his students. The plaintiff's behavior at a March 2, 1984 faculty symposium held at Schaumburg High School, a meeting all teachers were required to attend, exemplifies the plaintiff's disruptive hostility. At the request of the guest speaker, several rows of seats in the back of the hall had been taped off in order to move the audience forward for enhanced visibility and audibility. Resentful of this procedure and apparently of the entire meeting itself, Hesse sat down in the taped area and invited other teachers to follow suit. During the speaker's question and answer session, Hesse embarrassed the other teachers by asking the guest speaker pointed questions pertaining to Hesse's conflicts with the school administration, but unrelated to the speaker's topic. Following this incident, the school principal sent Hesse a memorandum reprimanding him for his behavior at the symposium. In response, Hesse sent back a sarcastic memorandum attacking the school officials, and containing insulting suggestions.
 
 
 6
 On June 1, 1984, the school board sent the plaintiff a request to undergo psychiatric examination. On the same day, the plaintiff was also given a "Notice to Remedy," which under Illinois law is an early step in the process which may lead to the dismissal of a tenured teacher. However, the request for psychiatric examination was later withdrawn at the request of plaintiff's counsel.
 
 
 7
 For the 1985-86 school term, the plaintiff was assigned to serve as a teacher traveling between Hoffman Estates High School and Palatine High School. While the defendants contend that this assignment was necessary because only two of Schaumburg High School's four art teachers were qualified to teach photography, it is this assignment which the plaintiff primarily relies upon as constituting retaliatory adverse employment action taken against him by the defendants.
 
 II
 
 8
 In analyzing the constitutional protection to be accorded Hesse's speech, we must first determine whether the context, content and form of Hesse's statements as revealed by the record as a whole indicate that they were on a matter of public concern. See Connick v. Myers, 461 U.S. 138, 147-48, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). The district court instructed the jury that the "plaintiff's statements on the subject of grading and student discipline policies and teacher evaluation procedures constitute speech on matters of public concern and are therefore entitled to constitutional protection." We have considered the plaintiff's expressions from the standpoint of their content, form and context as revealed by the entire record, and have carefully examined all of the various memoranda sent by the plaintiff to the defendants. As a matter of law, we can only conclude that but one of Hesse's memoranda arguably related to a matter of public concern.[2] In the context of this case, we hold that the jury instruction constituted prejudicial error.
 
 
 9
 With the exception noted above and hereinafter described, each of Hesse's memoranda dealt primarily with matters of personal interest to the plaintiff. Under these circumstances, we are not at liberty to review the wisdom of the personnel decision made by the defendants in this case. As the Supreme Court stated in Connick: "We hold only that when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." Id. at 147, 103 S.Ct. at 1690. While it cannot be gainsaid that educational policies in a public school are matters of public concern, all but one of the plaintiff's memoranda and statements were directed to the defense of his personal teaching methods and his resentment of the evaluations and criticisms of those methods. "To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark--and certainly every criticism directed at a public official--would plant the seed of a constitutional case." Id. at 149, 103 S.Ct. at 1691.
 
 
 10
 Even though some of Hesse's memoranda tangentially included general references to public education, an analysis of each memorandum clearly indicates that the memoranda themselves were not intrinsically on a matter of public concern. This Court has noted that "there is a difference between criticism directed at the institution in general and disputes with which the complainant has an intimate personal involvement." Egger v. Phillips, 710 F.2d 292, 318 (7th Cir.1983) (en banc). The fact that a public employee's "verbalized reason for [his lack of cooperation] was a criticism of the institution does not significantly alter the essentially private nature of the dispute." Id. at 318. This court has recently reaffirmed its stance that even though an expression may inherently deal with a matter of public concern, the Connick test " 'requires us to look at the point of the speech in question: was it the employee's point to bring wrongdoing to light? Or to raise other issues of public concern, because they are of public concern? Or was the point to further some purely private interest?' " Callaway v. Hafeman, 832 F.2d 414, 417 (7th Cir.1987) (quoting Linhart v. Glatfelter, 771 F.2d 1004, 1010 (7th Cir.1985)). The Eleventh Circuit has also noted that "a public employee may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run." Ferrara v. Mills, 781 F.2d 1508, 1515-16 (11th Cir.1986). The text of the various memoranda makes clear that Hesse was not attempting to speak out as a citizen concerned with the problems facing the school district, but was instead attempting to articulate his own private disagreement with policies and procedures which he had either failed to apply or refused to follow.
 
 
 11
 As previously indicated, only one of the plaintiff's memoranda was arguably directed to a matter of public concern. In the plaintiff's memorandum of December 8, 1984, addressed to the members of the school board and officials at Schaumburg High School, the plaintiff argued that the district's grading policy allowed students to pass regardless of whether they possessed the basic skills required of high school graduates. We consider this memorandum not only under all of the circumstances, but also in isolation. It is far less sarcastic[3] and offensive than the other memoranda, and its primary objective is to criticize the overall grading policy in the school district.
 
 
 12
 Assuming that the December 8, 1984 memorandum is one dealing with a matter of public concern, we must then consider whether the interests of the plaintiff, as a citizen, in commenting upon a matter of public concern outweigh the interests of the school district and its officials in promoting the efficiency of the public educational system. Pickering v. Board of Educ., 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). This Court has stated the test as "whether the adverse action taken by the defendants is likely to chill the exercise of constitutionally protected speech." McGill v. Board of Educ., 602 F.2d 774 (7th Cir.1979). In essence, we must decide whether the school board was justified in taking the alleged retaliatory action that it did against the plaintiff. In this regard, we must evaluate the need of the school district to maintain harmony and discipline among co-workers in the workplace, as well as the need to assure that the employee can competently perform his duties. See Egger v. Phillips, 710 F.2d at 318. Other things we must consider include the employer's need for confidentiality, the need for a close working relationship between the employer and employee, id. at 319, and the context in which the dispute arose. See Connick, 461 U.S. at 153, 103 S.Ct. at 1693. See also Yoggerst v. Stewart, 623 F.2d 35, 40 (7th Cir.1980); Clark v. Holmes, 474 F.2d 928 (7th Cir.1972), cert. denied, 411 U.S. 972, 93 S.Ct. 2148, 36 L.Ed.2d 695 (1973).
 
 
 13
 In striking a proper balance, it is essential that we note the increasing hostility and deteriorating employment relationship which had been developing between the plaintiff and his superiors for almost five years preceding the alleged adverse job action. The plaintiff's conduct at the March 2, 1984 faculty symposium illustrates the depths to which the relationship had disintegrated, as well as the disruption to the workplace. The plaintiff not only defied the procedures and planning for the meeting, but also openly invited other teachers to join his demonstration. In the five years preceding Hesse's transfer to traveling teacher status, the memorandum of December 8, 1984 was the only one of Hesse's memoranda that arguably dealt with a matter of public concern. This memorandum concerned a sensitive issue for which the plaintiff had been reprimanded by the administration. As the Supreme Court noted in Connick, "[w]hen employee speech concerning office policy arises from an employment dispute concerning the very application of the policy to the speaker, additional weight must be given to the supervisor's view that the employee has threatened the authority of the employer to run the office." 461 U.S. at 153-54, 103 S.Ct. at 1693. By the time of this memorandum, the plaintiff's intense hostility had created an atmosphere detrimental to workplace harmony and cooperation. The efficiency of the public educational system as it involved the plaintiff was adversely impacted.
 
 
 14
 In view of the district court's erroneous instruction to the jury, which permitted the jury to treat almost all of the plaintiff's memoranda as protected by the Constitution, the verdict was understandable. However, we must conclude that the interests of the school officials in promoting the efficiency of its public educational services far outweighed the interests of the plaintiff as a citizen in commenting upon the grading policies. As a matter of law, this is the only conclusion we can reach from an examination of the record as a whole.[4]
 
 III
 
 15
 While the jury was instructed that as a condition for recovery it must find that the protected expression was a substantial or motivating factor in the adverse job action, Mt. Healthy Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); see also Givhan v. Western Line Consol. School Dist., 439 U.S. 410, 416, 99 S.Ct. 693, 697, 58 L.Ed.2d 619 (1979), we need not, and in the context of a jury trial, should not determine whether the defendants would have taken the same job action without regard to the memorandum of December 8, 1984. While it would have been difficult, if not impossible, for a reasonable jury to have concluded that the single memorandum of December 8, 1984 was a substantial or motivating factor in the adverse job action, that causal determination is uniquely a jury question.
 
 
 16
 While it would have been possible for us to remand for a new trial with appropriate determinations and instructions from the trial court,[5] we have determined as a matter of law under Pickering v. Board of Educ., 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), that judgment should have been entered for the defendants and against the plaintiff.[6]
 
 IV
 
 17
 We therefore reverse the judgment of the trial court and remand with instructions to enter judgment for all defendants.
 
 
 18
 REVERSED.
 
 
 19
 FLAUM, Circuit Judge, dissenting.
 
 
 20
 I respectfully dissent. I believe the majority errs in concluding that none of Hesse's speech is constitutionally protected. Because I conclude that there are at least two instances of protected speech, I would remand for a new trial to allow a jury to determine whether Hesse's constitutionally protected speech was a substantial or motivating factor in the defendants' decision to transfer him. If so, the defendants would then have an opportunity to demonstrate that they would have taken the same action in the absence of Hesse's protected exercise of his first amendment rights.
 
 I.
 
 21
 A three-step analysis is required where a public employee's first amendment rights are at issue. Knapp v. Whitaker, 757 F.2d 827, 845 (7th Cir.), cert. denied, 474 U.S. 803, 106 S.Ct. 36, 88 L.Ed.2d 29 (1985). First, the court must determine whether the plaintiff's speech is constitutionally protected. This is a question of law. Connick v. Myers, 461 U.S. 138, 148 n. 7, 103 S.Ct. 1684, 1690 n. 7, 75 L.Ed.2d 708 (1983); Mt. Healthy Bd. of Educ. v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); Pickering v. Board of Educ., 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1967); Knapp, 757 F.2d at 839, 845. If the plaintiff's speech is protected by the first amendment, then two issues of fact must be addressed. The first factual issue is whether the defendant's actions were motivated by the plaintiff's constitutionally protected speech. Knapp, 757 F.2d at 845. If the plaintiff can demonstrate that his or her constitutionally protected speech was a substantial or motivating factor in the defendant's actions, the defendant must then have an opportunity to prove that it would have taken the same action in the absence of the plaintiff's exercise of his or her first amendment rights. Id.
 
 II.
 
 22
 To determine whether Hesse's speech is constitutionally protected, a two-part analysis is necessary. Id. at 839. First, the court must decide whether Hesse's speech dealt with a matter of public concern. Connick, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708. If so, the court must then employ a balancing test (the Pickering balance") to determine whether or not the speech is constitutionally protected. Pickering, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811.
 
 A.
 
 23
 In order to determine whether Hesse's speech dealt with a matter of public concern the court must look at the "content, form, and context" of Hesse's statements. Connick, 461 U.S. at 147, 103 S.Ct. at 1690.[1] Several of Hesse's statements were personal in nature, they related solely to Hesse's disagreements with the schools' administrators over his negative evaluations, class assignments, and relationship with the administration. This speech is not related to any matter of public concern and therefore I agree with the majority that it is not protected by the first amendment. Some of Hesse's speech, however, dealt with the district's disciplinary policies for students, grade fraud, and the procedures for evaluating teachers' performances. Each of these issues relates directly to the quality of education in the Schaumburg School District and therefore I would find that this speech addressed matters of public concern.[2] These were the issues Hesse raised during a faculty symposium on March 2, 1984, in speeches before the Board of Education, and in his grade fraud memorandum of December 8, 1984. Because each of these statements addressed matters of public concern, the court should apply the Pickering balance to determine whether they are constitutionally protected.[3]
 
 B.
 
 24
 Under Pickering, the court must balance the state's interest in an efficient and effective school system with a teacher's right as a citizen to speak out on matters of public concern. "The problem in any case is to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering, 391 U.S. at 568, 88 S.Ct. at 1734. The Pickering Court considered a number of factors and determined that the plaintiff's speech was protected because: (1) it was not directed at anyone with whom Pickering had contact on a daily basis; (2) Pickering's employment did not require personal loyalty to the school board or superintendent; (3) the speech did not disrupt harmony among his co-workers; and (4) Pickering's immediate supervisors' ability to maintain discipline was not negatively affected by the speech. Id. at 569-70, 88 S.Ct. at 1735-36. In Connick, although a portion of the plaintiff's speech touched upon a matter of public concern, the Court concluded that under the Pickering balance it was not constitutionally protected. Connick, 461 U.S. at 149-54, 103 S.Ct. at 1691-93. In reaching this conclusion, the Court considered several factors including: (1) whether the speech negatively affected the plaintiff's ability to perform her job; (2) the need for a close working relationship between the plaintiff, Myers, and her supervisor, Connick; (3) the time, place and manner of the speech; and (4) the context of the underlying dispute between Myers and Connick. Id. at 150-54, 103 S.Ct. at 1691-93.[4]
 
 
 25
 Hesse's memorandum of December 8, 1984 was directed to the Principal of Schaumburg High School and members of the Board of Education. It summarized the points Hesse made in his presentation to the Board of Education on October 13, 1984 regarding his perception that there was significant grade fraud at Schaumburg High School. Hesse's concern was with a policy the district had adopted which required teachers "not to use the actual percentage a student achieves in each nine week period and on the final exam when they average out the final semester grade." December 8, 1984, Grade Fraud Memo (emphasis in the original). Hesse's disagreement with this policy resulted from his conclusion that
 
 
 26
 the current policy is simply very effective at passing students who would otherwise fail if their actual percentage scores were used to determine their grades. I believe that this is a deceptive practice that makes the public think the district is doing a far better job than it actually is. But, the greatest harm is that such an illogical method of averaging scores sends students into the job market without the necessary knowledge they need to function on the job.
 
 
 27
 Id.
 
 
 28
 This memorandum was directed both at persons with whom Hesse had daily contact at Schaumburg High School and at members of the Board of Education with whom he had no daily contact. The memorandum did not have the potential to undermine the principal's ability to maintain discipline in the school, nor should it have affected the harmony among Hesse's fellow teachers. Furthermore, this speech did not arise directly out of the context of a personal dispute. I would therefore conclude, as a matter of law, that Hesse's first amendment right to speak out as a citizen on this matter of public concern was not outweighed by the state's interest in providing an efficient public educational system. I would hold that this memorandum is constitutionally protected speech.[5]
 
 
 29
 Similarly, Hesse's October 13 speech before the Board of Education also involved the issue of grade fraud.[6] The same Pickering factors can be applied to this instance of speech, yielding the conclusion that it is also protected by the first amendment. This speech could not have undermined the principal's ability to maintain discipline in the school; it did not affect the harmony among Hesse's fellow teachers; it did not directly arise in the context of a dispute between Hesse and the school administration; and the time, place and manner of the speech were appropriate.
 
 
 30
 Hesse's third instance of speech on a matter of public concern occurred at a faculty symposium on global education on March 2, 1984. At the symposium, Hesse asked the guest speaker various questions related to the topic of proper teacher evaluation procedures. Hesse voiced his complaint that the procedures utilized at Schaumburg High School were improper because they allowed students to evaluate their own teachers. Hesse argued that to ensure positive evaluations, teachers were pressured to give their students higher grades than they deserved.
 
 
 31
 Applying the Pickering balance to this speech, I would conclude that it is not constitutionally protected. First, Hesse spoke out at a mandatory faculty symposium which most of the Schaumburg High School faculty attended. The time, place and manner of Hesse's speech therefore posed a significant threat to the harmony between Hesse and his co-workers, to Hesse's employment relationship with his colleagues and superiors, and to the principal's ability to maintain discipline in the school. Several of the faculty members testified that Hesse's actions at the symposium were both offensive and embarrassing. Furthermore, some of the questions arose out of a dispute Hesse was having with his superiors regarding his own negative evaluations.[7] In this situation, the state's interest in promoting effective and efficient public educational services outweighed Hesse's right as a citizen to speak out on this matter of public concern. I would conclude that this speech is therefore not constitutionally protected under Pickering.
 
 C.
 
 32
 Because there are at least two important instances of constitutionally protected speech, I would remand this case for a new trial.[8] Hesse should have the opportunity to have a jury decide whether or not his transfer to a less desirable position was in retaliation for his exercise of his first amendment rights. A reasonable jury could find that Hesse's transfer was in retaliation for his protected speech for a number of reasons. First, Hesse's protected speech occurred much closer in time to Hesse's transfer than any of his unprotected speech. Second, Hesse's speeches to the Board of Education and the December 8 memorandum were directed to persons both inside and outside the Schaumburg High School administration. These instances of speech may therefore have had a greater potential to embarrass the school administrators who made the decision to transfer Hesse. Finally, the question of possible grade fraud is a sensitive issue which could demonstrate that the quality of education in the Schaumburg School District was significantly lower than the public had been led to believe. A jury should therefore be permitted to determine the factual questions of whether the defendants' actions were a result of Hesse's constitutionally protected speech, and whether the defendants would have taken the same action in the absence of this speech.[9]
 
 III.
 
 33
 Employees who have no disagreements with the manner in which an institution is run are unlikely to see any problems in need of public attention. As a result, these types of first amendment cases typically involve disgruntled employees. If employees are automatically denied first amendment protection simply because they are involved in some type of dispute with their employer, serious issues of public concern will never be brought to light. See Rode v. Dellarciprete, 845 F.2d at 1202 (3rd Cir.1988) ("Dismissing Rode's speech as unprotected merely because she had a personal stake in the controversy fetters public debate on an important issue because it muzzles an affected employee from speaking out."). An employer who takes adverse action against a disgruntled employee because the employee is disrupting the workplace, rather than in retaliation for the employee's exercise of his or her first amendment rights, will prevail.
 
 
 34
 The majority places undue emphasis on what it sees as the cumulative disruptive nature of Hesse's relationship with the defendants.[10] What the majority fails to fully comprehend is that to prevail an employee must prove not only that his or her speech is protected, but that it was a substantial or motivating factor in the employer's adverse job action. Furthermore, the employer can defend itself simply by showing that it would have taken the same adverse action in the absence of the protected speech. An employer is not prohibited from taking adverse job action against employees who disrupt the workplace, but an employer cannot do so in retaliation for an employee's constitutionally protected right to free speech.
 
 
 35
 Some of Hesse's speech is deserving of first amendment protection, and I would therefore reverse and remand for a new trial.
 
 
 
 [1]
 After trial, the district court judge suggested a remittitur of a portion of the $125,000 verdict for the plaintiff, but no formal order was ever entered
 
 
 [2]
 Of the memorandums written by the plaintiff which were introduced into evidence, three defended Hesse's method of supervising students, two constituted his personal response to complaints voiced by parents and students, three concerned the poor teaching evaluations which Hesse received from the administration, two defended Hesse's severe grading policies, two responded to the school administration's criticism of Hesse's behavior at the March 2, 1984 faculty symposium, and three alleged that the school administration was harassing Hesse
 The dissent perfunctorily concludes that Hesse's statements during the Board meeting on October 13, 1984 and during the March 2, 1984 faculty symposium constitute speech on matters of public concern because they touch on matters generally relating to public education. However, Connick requires us to analyze the form and context of the speech, as well as the content. We note that the subjects that Hesse allegedly discussed relate to the teaching practices for which he had been criticized. The dissent does not proffer any evidence from the record to show that Hesse's statements were more than part of a long-running defense of his teaching practices. In its application of Pickering to the faculty symposium incident, the dissent even concedes that Hesse's comments were clearly related to his own negative evaluations.
 In Section III and footnote 1 of its analysis, the dissent cites Rode v. Dellarciprete, 845 F.2d 1195 (3d Cir.1988), for the proposition that an employee's speech arising out of his personal grievance, but dealing with a matter of public concern, may be protected by the first amendment. Hesse's situation is distinguishable from Rode precisely because most of Hesse's speech did not deal with an issue of public concern. In Rode, a civilian employee of the Pennsylvania State Police ("PSP") had been suspended for a published interview she had given from her home which criticized the PSP. Although Rode's complaints were couched in terms of her employment problems with the PSP, her concerns were more than mere personal grievances. As the Third Circuit noted:
 Rode did not merely claim that she was being mistreated--she claimed that she was a victim of retaliation arising out of racial animus within the PSP. This is a matter of grave public concern, especially in light of the prior protracted history of litigation against the PSP charging it with racial animus in its employment practices....
 Rode v. Dellarciprete, 845 F.2d at 1201 (3d Cir.1988).
 
 
 [3]
 Footnote 10 of the dissenting opinion misconstrues our reference to sarcastic speech. We are not implying that sarcastic speech is not entitled to constitutional protection. We only note the sarcastic form of Hesse's speech as a measure of its disruption to the workplace, as well as its highly personal tenor. See, e.g., Callaway v. Hafeman, 832 F.2d at 417; Linhart v. Glatfelter, 771 F.2d at 1010
 
 
 [4]
 The dissent categorically concludes that Hesse's memorandum is constitutionally protected by artificially viewing the memorandum in isolation. While we do not contend that context is the determinative factor in the Pickering balance, in Hesse's case, the long-standing dispute between the parties cannot be ignored in reviewing the record. In Connick, the Supreme Court found that a questionaire distributed by an assistant district attorney to other district attorneys in the office contained one issue of public concern, but on balance concluded that the questionnaire as a whole was not protected. The questionnaire was determined to be an act of insubordination by the plaintiff in reaction to her impending transfer. 461 U.S. at 151-54, 103 S.Ct. at 1692-94. Hence, Hesse's memorandum must be considered from the vantage point of its cumulative disruptive effect on the Board's ability to maintain harmony and discipline in the workplace
 
 
 [5]
 Footnote 9 of the dissenting opinion miscomprehends our arguendo argument. We are merely noting that if we had concluded that Hesse's memorandum of December 8, 1984 satisfied the Pickering calculus, we would then have to remand this case for the jury's determination of whether the memorandum was a motivating factor in the transfer. See Mt. Healthy Bd. of Educ. v. Doyle, 429 U.S. at 287, 97 S.Ct. at 576. We surmise that even if we had remanded, a reasonable jury, after considering all of the disruptive and unprotected statements made by Hesse, would have concluded that the memorandum did not trigger the transfer. We reject the dissent's contention that the mere proximity in time of the grade fraud memorandum and the October 13 speech before the Board of Education to the transfer makes them the motivating cause of the transfer. However, our consideration of this issue does not constitute a basis of our holding, since this issue is clearly one for the jury
 
 
 [6]
 In view of our disposition of this case, we do not consider other alleged errors in the jury instructions, the admission of expert testimony or the excessiveness of damages
 
 
 [1]
 The majority argues that in reaching the conclusion that some of Hesse's speech was related to matters of public concern I fail to consider the form and context of his speech. I respectfully disagree. The Connick "matter of public concern" test and the Pickering balance are independent analyses which must be applied consecutively to determine whether a public employee's speech is protected under the first amendment. The form, content and context of an employee's speech can lead to the conclusion that it is related to a matter of public concern; yet, the court may subsequently conclude under the Pickering balance that the speech is not protected by the first amendment
 Just as the content alone of an employee's speech cannot insure first amendment protection, neither can the context of the speech automatically remove that protection. The mere fact that an employee is involved in an ongoing dispute with his or her employer does not mean that as a matter of law his or her speech can never relate to a matter of public concern under Connick. In fact, in Connick itself the Court held that some of the plaintiff's speech related to a matter of public concern, even though the plaintiff was involved in an ongoing dispute with her supervisor. Connick, 461 U.S. at 149, 103 S.Ct. at 1691. See also Rode v. Dellarciprete, 845 F.2d at 1200-1203 (3rd Cir.1988) (employee's speech dealing with matter of public concern protected by first amendment even though speech arose out of employee's personal employment problem).
 
 
 [2]
 Not every instance of an employee's speech will share the same form, content and context. Simply because some of an employee's speech is not protected by the first amendment, either because it is not related to a matter of public concern under Connick or is not protected under the Pickering balance, it does not necessarily follow that none of the employee's speech is protected. The district court erred in this case because it improperly instructed the jury that all of Hesse's speech was protected. The majority errs because it improperly concludes that none of Hesse's speech is constitutionally protected. The proper approach is to apply the appropriate legal analysis to each instance of Hesse's speech to determine its protected status
 In Knapp, for instance, this court analyzed a teacher's speech and concluded that his statements to the school board regarding his evaluations and class assignments did not address matters of public concern and were therefore unprotected. His statements about the travel reimbursement for coaches, the sufficiency of the school's liability insurance for athletic activities, and complaints about the district's grievance procedures, however, were of interest to the community and therefore dealt with matters of public concern. Knapp, 757 F.2d 827. See also Connick, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (one question in an employee's questionnaire asking co-workers if they felt pressure to work on specified political campaigns dealt with an issue of public concern, but the remainder of the questionnaire did not).
 
 
 [3]
 The majority agrees that Hesse's memorandum of December 8, 1984 addressed a matter of public concern. The majority, however, neglects to consider the constitutionally protected nature of Hesse's speeches on the same topic before the Board of Education on October 13, 1984 and other occasions. See infra note 6
 
 
 [4]
 Myers' speech arose in the context of a personal dispute between Myers and Connick regarding her pending transfer to another office. In the context of this dispute, Myers' speech threatened to disrupt the office, undermined Connick's authority, and had the potential to destroy necessarily close working relationships in the office. As a result, the Court concluded that Myers' first amendment rights were outweighed by the government's interest in effectively providing services to the public. Connick, 461 U.S. at 154, 103 S.Ct. at 1693
 
 
 [5]
 In applying the Pickering balance to Hesse's December 8 memorandum, the majority places undue weight on the nature of Hesse's relationship with the school's administration. The nature of this relationship, however, is neither the sole nor the most important factor in the balance
 
 
 [6]
 At trial Hesse testified that he spoke before the Board of Education on approximately eight separate occasions during the fall and winter of 1984-85. On these occasions Hesse spoke about the problems of student discipline in public education, grade fraud, competency testing for students and teachers, and teacher evaluation procedures. If this case were remanded, each of these instances of public speech would have to be analyzed to determine whether under Connick and Pickering they are protected by the first amendment. To the extent that Hesse was speaking about grade fraud and general disciplinary problems in public education, this speech relates to matters of public concern. Unless these other occasions involved different factors than those present when Hesse spoke to the Board of Education on October 13 about the issue of grade fraud, applying the Pickering balance to these additional instances of speech should lead to the conclusion that they are also protected by the first amendment
 
 
 [7]
 The majority asserts that because I "concede" that some of Hesse's questions at the faculty symposium arose out of a dispute between Hesse and the school's administration, that this speech could not have been related to a matter of public concern under Connick. As previously noted, however, this argument improperly collapses the Connick "matter of public concern" test into the Pickering balance. See supra note 1. See, e.g., Rode, 845 F.2d at 1201 (in determining if speech deals with a matter of public concern, complete reliance on employee's motivation for speaking is inappropriate). Furthermore, the mere fact that Hesse's speech at the faculty symposium may have arisen out of a dispute with his employers is not dispositive of the Pickering balance. As is clear from the discussion in the text, a number of factors, of which Hesse's ongoing disagreement with the administration is just one, lead to the conclusion that this speech is not protected by the first amendment
 
 
 [8]
 There may be more than two instances of protected speech depending on the specific facts of Hesse's other addresses to the Board of Education during the fall and winter of 1984-85. See supra note 6
 
 
 [9]
 The majority's discussion of the propriety of a remand for a new trial creates an unnecessary ambiguity. The majority concludes that Hesse's memorandum of December 8, 1984 is not constitutionally protected under Pickering. The majority goes on to speculate, however, that "it would have been difficult, if not impossible, for a reasonable jury to have concluded that the single memorandum of December 8, 1984 was a substantial or motivating factor in the adverse job action...." Supra at 753. If as a matter of law none of Hesse's speech is constitutionally protected under Pickering, there are no remaining factual issues for the jury. Nonetheless, the majority states that "it would be possible for us to remand for a new trial...." Id. If one accepts the majority's holding that there is no constitutionally protected speech, a remand would not be permissible
 
 
 [10]
 I must also express my disagreement with the impression that the majority creates regarding the extent of first amendment protection for sarcastic speech. The majority appears to argue that sarcastic speech is somehow less deserving of first amendment protection than is "serious" speech. See supra at 752. The mere sarcastic nature of otherwise protected speech, however, cannot remove it from first amendment protection. The reader should not be left with a contrary impression